PATRIC LESTER (Bar No. 220092)
Lester & Associates
5694 Mission Ctr. Rd.
San Diego, California 92108
Tel.: 619-665-3888
Fax: 314-241-5777
pl@lesterlaw.com

JOE VILLASEÑOR (Bar No. 265703)
**LEGAL AID SOCIETY OF SAN DIEGO, INC.**
110 South Euclid Avenue
San Diego, California 92114
Tel.:  619-471-2655
Fax:  619-263-5697
joev@lassd.org

*Attorneys for Plaintiff*
Adnan Rahman

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ADNAN RAHMAN<br><br>Plaintiff,<br><br>vs.<br><br>SAN DIEGO ACCOUNTS SERVICE, a California Corporation, doing business as CALIFORNIA ACCOUNTS SERVICE, and DOES 1-10, INCLUSIVE,<br>Defendants. | Civil Action No.  **'16CV2061 JLS  KSC**<br><br>**COMPLAINT FOR:**<br><br>• **VIOLATIONS OF FEDERAL FAIR DEBT COLLECTION PRACTICES ACT;**<br><br>• **VIOLATIONS OF CALIFORNIA ROSENTHAL FAIR DEBT COLLECTION PRACTICES ACT; AND**<br><br>• **VIOLATION OF CALIFORNIA CREDIT REPORTING AGENCIES ACT.**<br><br>**Jury Trial Demanded** |

-1-

Plaintiff ADNAN RAHMAN ("Mr. Rahman" or "Plaintiff") complains against Defendant SAN DIEGO ACCOUNTS SERVICE, doing business as CALIFORNIA ACCOUNTS SERVICE ("CAS"), and DOES 1 through 10, (all defendants collectively, "Defendants") as follows:

## INTRODUCTION

1. Defendant CAS violated federal law in its attempts to collect a medical debt incurred by Plaintiff at Palomar Medical Center for medical services provided by Vrijesh Tantuwaya M.D. (Dr. Tantuwaya). Plaintiff informed Defendants numerous times, in writing, that he disputed the debt which Defendants alleged he owed as it was an amount that Plaintiff had no legal obligation to pay due to his California Medi-Cal coverage at the time of the medical services. On several occasions, Defendants engaged in unfair debt collection activities in violation of 15 United States Code sections 1692, *et seq.*, ("FDCPA"), California Civil Code sections 1788, *et seq.*, ("RFDCPA"), California Civil Code sections 1798.92, *et seq.*, and California's Credit Reporting Agencies Act, through their efforts to collect amounts to which it was not legally entitled. Plaintiff now seeks to vindicate the rights under these statutes.

## JURISDICTION

2. This Court has original jurisdiction pursuant to Title 15 of the United States Code sections 1692, *et seq.*, the federal Fair Debt Collections Practices Act, and Title 28 of the United States Code section 1331. Further, this Court has supplemental jurisdiction over related state law claims pursuant to Title 28 of the United States Code section 1367.

3. Venue is proper in the United States District Court, Southern District of California because at least one of the defendants resides in this District and a substantial part of the acts, events, and/or omissions giving rise to the claims occurred within this District.

## JURY TRIAL DEMAND

4. Plaintiff hereby demands a jury trial.

## THE PARTIES

5. Plaintiff is and at all relevant times in the complaint, was an individual and a resident of San Diego County.

6. Plaintiff is informed and believes that Defendant CAS is and was at all times mentioned in this Complaint a California corporation doing business in California.

7. Plaintiff is informed and believes that Dr. Tantuwaya is and was at all times mentioned in this Complaint an individual and resident of San Diego County.

8. The true names and capacities, whether individual, corporate, association, or otherwise of Defendants named herein as DOES 1 through 10 are unknown to Plaintiff who therefore sues said Defendants by such fictitious names. Plaintiff will seek leave to amend this Complaint to allege their true names and capacities when the same have been ascertained. Plaintiff is informed and believes that each of the fictitiously named Defendants and/or their agents and employees are responsible in some manner for the events and happenings alleged in this Complaint, and proximately caused Plaintiff's damages.

9. At all relevant times, Plaintiff was and is a consumer as defined by Title 15 United States Code section 1692a(3).

10. At all relevant times, Plaintiff is informed and believes and, based thereon, alleges that Defendant CAS is, and all times in this Complaint was, a debt collection agency who, in the ordinary course of business, regularly, on behalf of itself or others, engages in the business of collecting consumer debt within the meaning of Title 15 United States Code section 1692a(6).

## FACTUAL ALLEGATIONS

11. On or around November 28, 2011, Plaintiff received emergency medical services at Palomar Medical Center located in Escondido, California.

-3-

COMPLAINT

12. As part of his visit to Palomar Medical Center's emergency room, he was seen by Dr. Tantuwaya a neurologist licensed by the California Medical Board. Palomar Medical Center arranged for Dr. Tantuwaya to see Plaintiff and in fact required Plaintiff to see Dr. Tantuwaya before discharging him from the hospital.

13. On information and belief, Dr. Tantuwaya's treatment consisted of merely a brief consultation with Plaintiff during which Dr. Tantuwaya informed Plaintiff of his treatment options. No further services were rendered at the time of said consultation or subsequently. Dr. Tantuwaya, in his discharge summary, acknowledged that Plaintiff's condition "necessitate[d] care at a center of excellence greater than can be provided by me or at Palomar Medical Center."

14. On information and belief, Dr. Tantuwaya asked Plaintiff how he was going to pay for the consultation during the consultation. Plaintiff responded that he was a Medi-Cal recipient and that payments to Dr. Tantuwaya would be made directly from Medi-Cal.

15. On information and belief, at all relevant times in this Complaint, Palomar Medical Center successfully submitted claims to Medi-Cal and received payment for other services provided to Plaintiff on or around November 28, 2011. The services provided by Dr. Tantuwaya were not included in these claims for reasons unknown to Plaintiff, and despite Dr. Tantuwaya's knowledge of his Medi-Cal eligibility.

16. Dr.Tantuwaya was obligated by California law to provide Plaintiff with a receipt, notifying him that he received information that Plaintiff was on Medi-Cal, was to submit claims related to the treatment of Plaintiff to Medi-Cal for payment for such services, and was to cease collection activity from Plaintiff immediately upon learning of his Medi-Cal benefits. On information and belief, Dr.Tantuwaya failed to do any of these things. Instead, he demanded the full

-4-

COMPLAINT

1  amount of such services be paid directly from Plaintiff, including amounts above
2  the Medi-Cal agreed–upon rate.

3      17.    California's Medi-Cal program is available to low-income residents of
4  California who cannot afford private health insurance coverage and provides for
5  subsidized health care benefits to qualifying recipients.

6      18.    As part of the agreement between health service providers and the
7  Medi-Cal program, providers are able to obtain agreed-upon rates for particular
8  medical services provided to Medi-Cal recipients.  Facilities which receive Medi-
9  Cal payments are obligated by state law to ensure that providers using their
10  facilities accept payment by Medi-Cal and provide services to patients who qualify
11  for Medi-Cal.

12      19.    Under California Welfare and Institutions Code section 14019.4(a),
13  providers are not allowed to collect amounts from qualifying patients above the
14  agreed-upon Medi-Cal rates.  To encourage compliance with this rule, it imposed a
15  penalty of three times the amount due to Medi-Cal for services for which the
16  provider is improperly trying to collect directly from the Medi-Cal recipient.  Cal.
17  Welf. & Inst. Code §14019.4(c).

18      20.    On information and belief, Dr. Tantuwaya, had he performed these
19  very same services in 2016, would have only been able to charge Plaintiff $175.00
20  according to the most recent Medi-Cal rate table published by the California
21  Department of Health Care Services.

22      21.    On or around August 21, 2012, Plaintiff filed a complaint regarding
23  Dr. Tantuwaya's refusal to accept Medi-Cal with the California Medical Board.

24      22.    On or around October 30, 2012, Defendant CAS demanded Plaintiff
25  pay $1,540.42 in a dunning letter it sent to him via mail.

26      23.    On or around December 2012, Defendant CAS contacted Plaintiff by
27  telephone in an attempt to collect the debt from him.  At this time, Plaintiff
28

informed Defendant CAS that he disputed the debt due his qualification for Medi-Cal.

24. On information and belief Defendant CAS, through its employees, ignored Plaintiff's dispute and persisted in collecting the debt anyway.

25. On or around July 22, 2015, Plaintiff disputed the debt in writing to Dr. Tantuwaya asking him to cease communicating with him or any third parties regarding the debt, and to remove false information regarding the amount of the debt from his consumer credit profile explaining in detail that the debt collection was improper due to his Medi-Cal coverage at the time of the medical services.

26. Dr. Tantuwaya has since refused to comply with the law and instead has doubled his collection efforts adding on interest to the balance and placing false and derogatory information on Plaintiff's consumer credit profile.

27. On information and belief, Dr.Tantuwaya has instructed Defendant ACS, as his agent, to continue collecting from Plaintiff despite knowing his Medi-Cal eligibility.

28. On information and belief, in the regular course of business operations, Defendant CAS frequently and routinely furnishes information and reports to major credit reporting agencies regarding the status of the accounts it collects on as part of its regular debt collection activities so as to provide information to a consumer's credit worthiness, credit standing and credit capacity.

29. On information and belief, Defendant CAS falsely represented and continues to falsely represent the amount, nature, and legal status of the purported debt alleged to be owed by Plaintiff to the major credit reporting agencies.

30. On or around August 28, 2015, CAS reported that Plaintiff owed a balance of $1,975.00 to the Transunion Credit Reporting Agency.

31. Plaintiff now sues for numerous violations of Title 15 United States Code sections 1692, et seq., California's Rosenthal Fair Debt Collection Practices Act, and the California Credit Reporting Agencies Act.

# FIRST CAUSE OF ACTION
## Violations of the Fair Debt Collection Practices Act 15 U.S.C. §§1692 *et seq.*
## Against Defendant CAS

32. Plaintiff repeats and re-alleges and incorporates by reference paragraphs 1 through 35 above of the Complaint as if stated fully herein.

33. Defendant CAS is a debt collector as it regularly uses the mail or interstate commerce to collect debts on behalf of others.

34. Defendant CAS, in written communications mailed to Plaintiff, alleged that Plaintiff is liable for a debt incurred for personal, family or household purposes, for medical bills associated with services provided by Defendant Tantuwaya.

35. Plaintiff is a consumer as Defendant CAS has alleged that he is obligated to pay a debt.

36. Defendant CAS violated the federal Fair Debt Collection Practices Act, ("FDCPA"). Defendants' violations include, but are not limited to:

- Violating Title 15 of the United States Code section 1692e(2)(A) by falsely representing the character, amount, and legal status of the alleged debt;
- Violating Title 15 of the United States Code section 1692e(8) by communicating false credit information to credit reporting agencies, including that the debt is disputed;
- Violating Title 15 of the United States Code section 1692f(1) by collecting an amount not expressly authorized by the agreement creating the debt or permitted by law;
- Violating Title 15 of the United States Code section 1692e(10) by using a false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer; and

37. As a direct and proximate result of the above violations of the FDCPA, Defendant CAS has caused Plaintiff to suffer damages including informational injury as anticipated by Congress in enacting the FDCPA and harm to his reputation and credit.

## SECOND CAUSE OF ACTION

**Violations of the Rosenthal Fair Debt Collection Practices Act California Civil Code § 1788, *et seq.* Against Defendant CSA and Defendant Tantuwaya.**

38. Plaintiff repeats, re-alleges, and incorporates by reference paragraphs 1 through 37 above of the Complaint as if stated fully herein.

39. Defendant CSA is a "debt collector" as it regularly, in the ordinary course of business, whether on behalf of themselves or others, engage in the collection of consumer debt.

40. Plaintiff is a "debtor" as he is alleged to owe a debt to Defendant CSA and Dr. Tantuwaya by reason of a transaction between a natural person and another in which money, property, or services are acquired on credit for personal, family, or household use, specifically, the medical debt incurred by Plaintiff for medical services provided at Palomar Medical Center by Dr. Tantuwaya.

41. The debt alleged to be owed to Defendant CSA and Dr.Tantuwaya is a "consumer debt" because it constitutes money alleged to be owed from a natural person by reason of a consumer credit transaction.

42. Defendant CSA violated the California Rosenthal Fair Debt Collection Practices Act. Defendants' violations include, but are not limited to, the following:

- Violating California Civil Code section 1788.17 by violating 15 United States Code sections 1692, *et seq.* as detailed above.

43. As a direct and proximate result of the above violations of the Rosenthal Fair Debt Collection Practices Act, Defendants directly and proximately caused Plaintiff to suffer damages including informational injury as anticipated by Congress in enacting the FDCPA and harm to his reputation and credit.

# THIRD CAUSE OF ACTION

## Violation of California Civil Code §1785.1, *et seq.*, Against CSA

44. Plaintiff repeats, re-alleges, and incorporates by reference paragraphs 1 through 43 above of the Complaint as if stated fully herein.

45. Plaintiff is a "consumer" within the meaning of the Consumer Credit Reporting Agencies Act as he is a natural individual.

46. Defendants CAS is a "person" to which the Consumer Credit Reporting Agencies Act applies as it is a corporation.

47. Because CAS is a partnership, corporation, association, or other entity, and is therefore a "person" as that term is defined by Cal. Civ. Code § 1785.3(j), Defendant is and always was obligated to not furnish information on a specific transaction or experience to any consumer credit reporting agency if the person knows or should have known that the information is incomplete or inaccurate, as required by Cal. Civ. Code § 1785.25(a). CAS knew or should have known that Plaintiff was eligible for Medi-Cal at the time obtaining the medical services and therefore had no obligation to directly pay for the services and certainly no obligation to pay amounts above the agreed-upon Medi-Cal rate.

48. Defendant CAS furnished information of Plaintiff's transaction for medical services to consumer credit reporting agencies.

49. On information and belief, the information furnished to credit reporting agencies regarding Plaintiff's transaction for medical services was false because Dr. Tantuwaya was aware of Plaintiff's qualification for Medi-Cal coverage at the time of rendering medical services.

50. Likewise, Defendant CSA knew or should have known, due to Plaintiff's prior disputes, which it noted on the information furnished to Plaintiff's credit profile, that the debt allegedly owed by Plaintiff was not legally owed due to Plaintiff's Medi-Cal eligibility, that the information was incomplete or inaccurate.

51.     On information and belief, Defendant CAS provided and continues to provide false information to credit reporting agencies regarding Plaintiff's transaction over twenty-four separate occasions within the last two years. The information was false because Plaintiff does not and did not in fact owe Dr. Tantuwaya any money whatsoever and Dr. Tantuwaya's sole basis to receive any payment was through California's Medi-Cal program.

52.     The repeated nature of the violations after knowing the basis for the Plaintiff's dispute reveals the intentional nature of Defendants false credit reporting campaign to force payment of a debt that was not legally owed.

53.     Moreover, 15 U.S.C. § 1681(b)(1)(f) of the Fair Credit Reporting Act ("FCRA"), expressly exempts Cal. Civ. Code § 1785.25(a) from the FCRA's general exclusion of State law claims. Thus, Plaintiff's CCCRAA claim is not preempted by the FCRA.

54.     Due to the repeated and intentional violations, Plaintiff seeks punitive damages in the amount of up to $5,000.00 per intentional violation of the Consumer Credit Reporting Agencies Act from Defendant CAS.

55.     As a result of said inaccurate reporting, Plaintiff suffers, and continues to suffer, actual damages, including harm to their credit-worthiness, credit history, and credit scores.

## PRAYER FOR RELIEF

1.  $1,000.00 in statutory damages for Defendant CSA's violation of 15 U.S.C. Sections 1692, *et seq.*;
2.  $1,000.00 in statutory damages for Defendant CSA's and violations of California Civil Code Section 1788.30;
3.  Actual damages pursuant to 15 U.S.C. Section 1692k and California Civil Code Section 1788.30.
4.  Attorney's fees and litigation costs pursuant to pursuant to 15 U.S.C. Section 1692k and California Civil Code Section 1788.30;

5. Injunctive relief pursuant to California Civil Code Section 1785.31(b);

6. Punitive damages pursuant to the California Credit Reporting Agencies Act up to $5,000.00 for each violation during the statutory period; and

7. Any other relief the court deems proper.

Dated: August 16, 2016

Respectfully submitted,
By  s/ Patric Lester
      s/ Joe Villaseñor
PATRIC LESTER
JOE VILLASEÑOR
*Attorneys for Plaintiff*
Adnan Rahman
Email: pl@lesterlaw.com
Email:  joev@lassd.org