1
2
3
4
5
6
7

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

8
9
10
11

ADNAN RAHMAN,

Plaintiff,

v.

SAN DIEGO ACCOUNTS SERVICE, a
California corporation, d/b/a
CALIFORNIA ACCOUNTS SERVICE,
et al.,

Defendant.

Case No.: 16cv2061-JLS (KSC)

**ORDER GRANTING IN PART AND
DENYING IN PART PLAINTIFF'S
MOTION TO STRIKE**

(ECF No. 13)

Presently before the Court is Plaintiff Adnan Rahman's Motion to Strike Affirmative Defenses in Defendant's First Amended Answer ("MTS"), (ECF No. 13), Defendant's Response in Opposition to Plaintiff's Motion to Strike ("Opp'n"), (ECF No. 15), and Plaintiff's Reply in Support of Motion to Strike ("Reply"), (ECF No. 16). The Court took the matter under submission without oral argument pursuant to Civil Local Rule 7.1(d). (ECF No. 18.) Having considered the Parties' arguments and the law, the Court **GRANTS IN PART** and **DENIES IN PART** Plaintiff's Motion to Strike.

## BACKGROUND

In 2011, Plaintiff received emergency medical services at Palomar Medical Center ("Palomar") in Escondido, California. (Compl ¶ 11, ECF No. 1.) At least one of those

1

services was provided by Dr. Tantuwaya. (*Id.* ¶ 12–15.) Subsequently, although Plaintiff's Medi-Cal coverage allegedly paid some of these emergency-medical claims, "[t]he services provided by Dr. Tantuwaya were not included in these claims . . . despite Dr. Tantuwaya's knowledge of [Plaintiff's] Medi-Cal eligibility." (*Id.* ¶¶ 14, 15.) Defendant California Account Services has since taken action on this alleged debt, including by making alleged false representations to credit reporting agencies regarding "the amount, nature, and legal status of the purported debt alleged to be owed by Plaintiff . . . ." (*Id.* ¶¶ 22–30.)

Plaintiff marshaled these allegedly false representations into a Complaint alleging claims against Defendant under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, (*id.* ¶¶ 32–37); the Rosenthal Fair Debt Collection Practices Act ("Rosenthal Act"), Cal. Civ. Code § 1788 *et seq.*, (*id.* ¶¶ 38–43); and the Consumer Credit Reporting Agencies Act ("CCRAA"), Cal. Civ. Code § 1785.1 *et seq.*, (*id.* ¶¶ 44–55). Defendant filed an Answer to the Complaint, (ECF No. 11), including several affirmative defenses which underlie the substance of this Motion to Strike.

## LEGAL STANDARD

Rule 12(f) provides that the court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "The function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial . . . ." *Whittlestone, Inc. v. Handi–Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010) (quoting *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993), *rev'd on other grounds*, 510 U.S. 517 (1994)). Accordingly, "[a] defense may be struck if it fails to provide 'fair notice' of the basis of the defense." *Qarbon.com Inc. v. eHelp Corp.*, 315 F. Supp. 2d 1046, 1048 (N.D. Cal. 2004); *see also Wyshak v. City Nat'l Bank*, 607 F.2d 824, 826 (9th Cir. 1979).

"Motions to strike are 'generally disfavored because they are often used as delaying tactics and because of the limited importance of pleadings in federal practice.' " *Cortina v. Goya Foods, Inc.*, 94 F. Supp. 3d 1174, 1182 (S.D. Cal. 2015) (quoting *Rosales v. Citibank*, 133 F. Supp. 2d 1177, 1180 (N.D. Cal. 2001)). "[M]otions to strike should not be granted

unless it is clear that the matter to be stricken could have no possible bearing on the subject matter of the litigation." *Colaprico v. Sun Microsystems, Inc.*, 758 F. Supp. 1335, 1339 (N.D. Cal. 1991). "When ruling on a motion to strike, this Court 'must view the pleading under attack in the light most favorable to the pleader.' " *Id.* (citing *RDF Media Ltd. v. Fox Broad. Co.*, 372 F. Supp. 2d 556, 561 (C.D. Cal. 2005)).

## ANALYSIS

As an initial matter, the Court addresses the threshold issue of whether the *Twombly* and *Iqbal* "plausibility" standard governs Defendant's pleading of its affirmative defenses. Plaintiff contends that it does, (*e.g.*, MTS 2–6); Defendant contends that the original enunciation of the "fair notice" standard in *Wyshak v. City National Bank*, 607 F.2d 824 (9th Cir. 1979), governs instead, (Opp'n 3). The Court agrees with Plaintiff.

Prior to the Supreme Court's articulation of the "plausibility" standard for pleading under Federal Rule of Civil Procedure 8, there was no question that in our Circuit the *Wyshak* "fair notice" standard governed pleading an affirmative defense under Rule 8. Pursuant to *Wyshak*, "[t]he key to determining the sufficiency of pleading an affirmative defense is whether it gives plaintiff fair notice of the defense." 607 F.2d at 827 (citing *Conley v. Gibson*, 355 U.S. 41, 47–48 (1957); 5 Wright & Miller Federal Practice and Procedure, § 1274 at 323). However, in 2007 and 2009, the Supreme Court issued seminal decisions in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), holding that Rule 8 requires a plaintiff to plead facts supporting a "plausible" rather than merely "possible" claim to relief. *E.g.*, *Iqbal*, 556 U.S. at 678–79.

Since *Twombly* and *Iqbal*, district courts in the Ninth Circuit have come to differing conclusions regarding whether those cases necessitate a different interpretation of *Wyshak*'s "fair notice" standard. *See, e.g.*, *J & J Sports Prods., Inc. v. Scace*, No. 10CV2496-WQH-CAB, 2011 WL 2132723, at *1 (S.D. Cal. May 27, 2011) (discussing split). Ultimately, this Court agrees with the numerous district courts that have concluded the *Twombly* and *Iqbal* "plausibility" standard applies with equal force to the pleading of affirmative defenses. Although there is a valid question as to whether the logic of *Twombly*

16cv2061-JLS (KSC)

and *Iqbal*—rendered in the context of Rule 8(a)—applies with equal force to Rule 8(c) governing affirmative defenses, this Court concludes that *Wyshak* compels application of the plausibility standard to pleading affirmative defenses. Specifically, the only case *Wyshak* cited to support its "fair notice" standard is *Conley v. Gibson*, 355 U.S. 41, 47–48 (1957), *Wyshak*, 607 F.2d at 827, and *Conley* has since been abrogated insofar as it permitted pleading at a standard lower than *Twombly*'s plausibility standard, *see Twombly*, 550 U.S. at 555, 560–61 (citing *Conley* for "fair notice" rule statement immediately prior to articulating "plausibility" standard and expressly abrogating *Conley*'s "no set of facts" language). Accordingly, "fair notice" necessarily now encompasses the "plausibility" standard; whatever standard "fair notice" previously encompassed no longer exists. *E.g.*, *Madison v. Goldsmith & Hull*, No. 5:13-CV-01655 EJD, 2013 WL 5769979, at *1 (N.D. Cal. Oct. 24, 2013); *Gonzalez v. Heritage Pac. Fin., LLC*, No. 2:12-CV-01816-ODW, 2012 WL 3263749, at *2 (C.D. Cal. Aug. 8, 2012); *Perez v. Gordon & Wong Law Grp., P.C.*, No. 11-CV-03323-LHK, 2012 WL 1029425, at *6–8 (N.D. Cal. Mar. 26, 2012).

Accordingly, the Court reviews for plausibility Defendant's pleaded affirmative defenses of (1) Statutes of Limitations; (2) Bona Fide Error; (3) Good Faith; and (4) Offset. The Court addresses each in turn.

## I.  Statutes of Limitations

Under the FCDPA and the Rosenthal Act, a Plaintiff must bring an action within one year of the date of the alleged violation. 15 U.S.C. § 1692k(d); Cal. Civ. Code § 1788.30(f). Under the CCRAA such time period stretches to two years from "the date the plaintiff knew of, or should have known of, the violation . . . ." Cal. Civ. Code § 1785.33. Plaintiff asserts that "[l]ess than one year elapsed between the violations allegedly committed on or about August 28, 2015 and the date of commencement of this action on August 16, 2016." (MTS 7.) Therefore, Plaintiff argues, "Defendant cannot prevail on a statue limitations defense and it should be stricken from Defendant's Amended Answer." (*Id.*) But this does not tell the whole story of Plaintiff's Complaint. True, Plaintiff lists Defendant's specific violation on August 28, 2016, (Compl. ¶ 30), but Plaintiff also alleges "[o]n information

and belief, Defendant CAS falsely represented and continues to falsely represent the amount, nature, and legal status of the purported debt" such that "Plaintiff now sues for <u>numerous violations</u> of" the relevant statutory provisions, (*id.* ¶¶ 29, 31). Accordingly, to the extent Plaintiff attempts to assert claims for violations prior to August 16, 2015, such claims may well be barred by relevant statutes of limitation. That is, rather than Defendant's affirmative defenses it is instead Plaintiff's <u>Complaint</u> that lacks specificity in pleading. And the Court will not use the Complaint's deficiencies as a sword against Defendant's attempts to defend Plaintiff's general allegations.

Given the foregoing, the Court **DENIES** Plaintiff's Motion to Strike Defendant's affirmative defense regarding statutes of limitations.

## II.     Bona Fide Error

The FDCPA provides a defense of "bona fide error" when a debt collector can show "by a preponderance of the evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." 15 U.S.C. § 1692k(c). Because such a showing necessarily requires a "mistake" on the part of a Defendant, "[d]istrict courts have held that the affirmative defense of bona fide error must be stated with particularity under Rule 9(b)." *Youssofi v. Allied Interstate LLC*, No. 15CV2197-GPC (JLB), 2016 WL 29625, at *3 (S.D. Cal. Jan. 4, 2016) (collecting cases). Particularity requires setting forth "the who, what, when, where, and how of the misconduct charged." *Ebeid ex rel. U.S. v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010) (quoting *Vess v. Ciba–Geigy Corp. USA,* 317 F.3d 1097, 1106 (9th Cir. 2003)).

Defendant's affirmative defense of bona fide error sets forth the following information:

> As a separate, affirmative defense, assuming *arguendo* that Defendant violated a statute alleged in the Complaint, which presupposition Defendant denies, such violation was not intentional and resulted from a bona fide error, notwithstanding the maintenance of procedures reasonably adapted to avoid any such error. Defendant contends that it . . . has appropriate policies and

procedures in place, in which it verifies all debts before collecting thereon. Here, Defendant verified the debt at issue, which reflected the cost of Dr. Tantuwaya's medical services. Dr. Tantuwaya was not a Medi-Cal provider and once the appropriate insurance adjustments were made, a valid medical debt arose that was not paid, and to which Defendant attempted to collect.

(Am. Answer 7–8.) But this brief statement is insufficient to comply with Rule 9(b)'s particularity requirement. Essentially, Defendant asserts only two relevant facts: that (1) Defendant verifies all debts prior to collection and (2) Defendant verified this particular debt. Noticeably lacking—at minimum—are any assertions regarding what <u>particular</u> policies and procedures Defendant has in place to verify debts, or <u>how</u> or <u>when</u> Defendant attempted to verify this particular debt. *See Youssofi*, 2016 WL 29625, at *3–4.

Accordingly, Defendant's affirmative defense of bona fide error is not currently pled with sufficient particularity to comply with Rule 9(b). Plaintiff's Motion to Strike is therefore **GRANTED** as to Defendant's affirmative defense of bona fide error.

## III. Good Faith

As an initial matter, Plaintiff argues that "good faith" is not a defense to FDCPA, Rosenthal Act, or CCRAA liability, (MTS 11–12), and Defendant responds only that "[u]nlike the FDCPA, the Rosenthal Act is not a strict liability statute" and therefore "Good Faith . . . is a defense to [a] Rosenthal Act claim[,]" (Opp'n 4). Accordingly, Defendant tacitly concedes Plaintiff's points regarding FDCPA and CCRA liability. Further, Defendant's good faith affirmative defense states only the following:

> Defendant contends it did not engage in any conduct that was outrageous, intentional and malicious or done with reckless disregard with respect to Plaintiff. Defendant also contends that it never engaged in any knowing, willful or fraudulent conduct with respect to Plaintiff. Dr. Tantuwaya was not a Medi-Cal provider, and as such, Defendant collected on a valid medical debt, which stemmed from the services rendered to Plaintiff by Dr. Tantuwaya.

(Am. Answer 8.) This statement fails to provide any factual support—plausible or not—for the assertion that Dr. Tantuwaya was not a Medi-Cal provider, or how Defendant would have known such information prior to allegedly violating the Rosenthal Act.[1]

Accordingly, all aspects of Defendant's good faith affirmative defense fail. The Court therefore **GRANTS** Plaintiff's Motion to Strike Defendant's good faith affirmative defense.

## IV.    Offset

Defendant's final affirmative defense is one of "offset." Specifically, "Defendant contends that any recovery by Plaintiff be offset by the amount owed to Defendant resulting from the valid medical debt from which this dispute arose." (Am. Answer 8.) Plaintiff attacks both the legal and factual sufficiency of Defendant's pleading. (MTS 12–14.)

Regarding legal sufficiency, Plaintiff first acknowledges that "the Ninth Circuit has not directly addressed the availability of offset to an FDCPA defendant," and then focuses on caselaw analogies and policy reasons as to why such a defense should not be available. However, this is insufficient to show that the defense has "no possible bearing on the subject matter of the litigation." *Colaprico*, 758 F. Supp. at 1339. Accordingly, the Court will not at this stage strike this affirmative defense as a matter of law.

Regarding factual sufficiency, Plaintiff argues that Defendant's statement "does not give any reference of what the amount is or how said debt should reduce Plaintiff's recovery." (MTS 12.) However, Defendant specifically argues that "<u>any</u> recovery" should be offset by "the amount owed to Defendant <u>resulting from the valid medical debt</u> from which this dispute arose." (Am. Answer 8.) And Plaintiff's Complaint acknowledges two underlying debt figures which may ultimately be proven to be "valid": either "the full amount of . . . services" Dr. Tantuwaya performed, (Compl. ¶ 16), or the amount Dr.

---

[1] Plaintiff also asserts that good faith is not a defense to the particular Rosenthal Act claims here at issue. (MTS 11–12; Reply 4–6); *see also Bentkowsky v. Benchmark Recovery, Inc*, No. 13-CV-01252-VC, 2015 WL 502948, at *1–2 (N.D. Cal. Feb. 3, 2015). However, the Court does not address this legal issue given Defendants' current lack of factual support for the defense.

16cv2061-JLS (KSC)

Tantauwaya "would have . . . been able to charge Plaintiff . . . according to the [relevant] Medi-Cal rate table[,]" (*id.* ¶ 20). The Court concludes that this is sufficient to plausibly state an affirmative defense for offset. *See, e.g.*, *Jacobson v. Persolve, LLC*, No. 14-CV-00735-LHK, 2014 WL 4090809, at *9 (N.D. Cal. Aug. 19, 2014) ("Even the minimal language in [Defendant]'s Answer satisfies the heightened 'plausibility' standard because the words 'the amount owed to Defendant' is self-explanatory in the context of the current dispute.").

Given the foregoing, the Court **DENIES** Plaintiff's Motion to Strike Defendant's affirmative defense of offset.

<b>CONCLUSION</b>

Given the foregoing, the Court **GRANTS** Plaintiff's Motion to Strike Defendant's affirmative defenses of (1) good faith and (2) bona fide error, and **DENIES** Plaintiff's Motion to Strike Defendant's affirmative defenses of (3) statutes of limitations and (4) offset. Defendant is **GRANTED LEAVE TO AMEND** its Answer regarding the affirmative defenses of good faith and bona fide error.

**IT IS SO ORDERED.**

Dated: April 18, 2017

Hon. Janis L. Sammartino
United States District Judge

16cv2061-JLS (KSC)